UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| VOTTA & VOTTA LAW OFFICES, LTD.,<br>Plaintiff<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, ALIAS,<br>Defendant | C.A. NO. 07-420-ML |

**OPPOSITION TO DELUCA & WEIZENBAUM, LTD'S MOTION TO QUASH AND FOR PROTECTIVE ORDER**

Defendant, Unum Life Insurance Company of America ("Unum") submits this memorandum in opposition to Deluca & Weizenbaum, LTD's ("Deluca") Motion to Quash and For Protective Order relating to the Keeper of Records Subpoena served on April 10, 2008 (the "Subpoena").

**BACKGROUND**

In this case, the plaintiff Votta & Votta Law Offices, LTD. ("Votta & Votta") seeks to recover the payment of benefits under a business overhead expense ("BOE") policy issued by Unum to Joseph Votta, Jr. ("Joseph") in conjunction with his individual disability insurance policy. Pursuant to its terms, the BOE policy pays the insured's share of the usual and customary business expenses, which he or his business incurs on a regular basis and are essential to the business operation. If the insured is no longer an owner of a business and therefore has no responsibility to pay expenses, the defendant contends that the policy does not apply.

Joseph was an attorney with Votta & Votta. On August 31, 2005, Joseph filed a claim for total disability benefits under his individual disability insurance policy with Unum. Following

an investigation, Unum approved Joseph's claim and began paying disability benefits in May, 2006.

On March 3, 2006, while the Joseph's individual claim was being evaluated, his brother and law partner, Stephen Votta, sent an assignment under the BOE policy to Unum. According to the assignment, which is dated February 27, 2006, Joseph authorized Unum to "discuss and negotiate any benefits to which I may be entitled" with his siblings and Votta & Votta. He also authorized Unum to pay all benefits directly to Votta & Votta.

Unum paid benefits to Votta & Votta under the BOE policy through April 2006, but denied any further benefits based on information indicating that Joseph had sold his ownership interest in Votta & Votta. Votta & Votta denies that Joseph sold his interest in the law firm and claims that Joseph is still responsible for his portion of the firm's monthly expenses. Deluca represented Joseph in his disability claim and upon information and belief in negotiations with his siblings.

On or about October 15, 2007, Votta & Votta filed this action in Providence Superior Court. On November 16, 2007 Unum removed the case to this Court. On April 10, 2008 Unum served the Subpoena on Deluca seeking the production of various documents relating to Joseph's departure from Votta & Votta. A copy of the Subpoena is attached hereto as Exhibit A. The time for production was set for April 30, 2008. On May 5, 2008 counsel for Unum contacted Deluca to inquire as to the whereabouts of the responsive documents and was told that the documents would be mailed the following day. On May 12, 2008, Deluca called Unum's counsel and requested a brief extension to May 19, 2008 to respond to the subpoena.

Instead of producing the documents, Deluca filed the instant Motion to Quash and for Protective Order on May 14, 2008, along with a one paragraph Memorandum claiming that all of

the documents requested by the Subpoena are protected by the attorney client privilege and the work product doctrine. In addition, Deluca claims that the documents sought are also in the possession of Votta & Votta and therefore cannot be obtained from Deluca. As set forth in greater detail below, Unum opposes Deluca's Motion to Quash because the motion is untimely, the documents requested are not protected by the attorney client privilege or the work product doctrine. The fact that the documents may be available from multiple sources provides no basis for quashing an otherwise valid subpoena.

## ARGUMENT

I. The Motion To Quash is Untimely.

A motion to quash must be timely filed in order for the court to consider it. Sterling Merchandising, Inc. v. Nestle, S.A., 470 F. Supp. 2d 77, 85 (D.P.R. 2006) citing Fed. R. Civ. P. 45(c)(3)(A)(iii). Pursuant to Fed. R. Civ. P. Rule 45(c)(2)(B) a person commanded to produce documents may serve a on the party designated in the subpoena a written objection to the materials requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. See Id. (noting that some courts hold that the term "timely" should be read in conjunction with 45(c)(2)(B)). Some Federal Courts read "timely" to allow a longer period of time not to exceed the time provided in the subpoena to comply. See Id. Deluca's Motion to Quash is untimely under either theory. Deluca did not serve Unum with a written objection within the 14 days as required by the rule and in fact did not contact Unum at all prior to the date of production. As a result, the Motion to Quash should be denied as untimely.

II. The Documents Sought Are Not Protected By The Attorney Client Privilege.

The attorney client privilege does not cover every document in an attorney's file. The attorney client privilege is well-established and its rationale is straightforward. "By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Still, the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals. In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001). "In other words, the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." United States v. Nixon, 418 U.S. 683, 709-10 (1974). The dimensions of the privilege itself are reasonably well established. The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice. See United States v. Bollin, 264 F.3d 391, 412 (4th Cir. 2001).

Specifically the attorney client privilege protects communication between an attorney and client:

> 1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 John Henry Wigmore, Evidence § 2292, at 554 (John T. McNaughton ed. 1961).

Just because a document is in the possession of counsel does not make it privileged. In order to be protected from disclosure it must be a confidential communication made for the purpose of obtaining legal advice. See Bollin, 264 F.3d at 412. "All depends on the

circumstances surrounding a given communication. Absent an expectation of confidentiality, none accrues. The attorney client privilege assumes, of course, that the communications are made with the intention of confidentiality…. The moment confidence ceases, privilege ceases. This much is universally conceded....” In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d at 1015, n.6 quoting 8 J. Wigmore, Evidence § 2311 (McNaughton rev.1961).

Deluca represented Joseph. Deluca did not represent Votta & Votta. On its face, it is apparent that the Subpoena is not seeking the discovery of privileged documents. The Subpoena seeks the production of various documents relating to the nature of Joseph’s departure from Votta & Votta and his business relationship with Votta & Votta. As such, any communications with Votta & Votta are not protected by the attorney client privilege, nor are agreements between Joseph and Votta & Votta or copies checks issued to Votta & Votta or received from Votta & Votta.

Deluca has not satisfied its burden of proving that the attorney client privilege applies. The party claiming the privilege bears the burden of demonstrating that: "the attorney-client privilege applies; (2) the communications were protected by the privilege; and (3) the privilege was not waived." United States v. Aramony, 88 F.3d 1369, 1389 (4th Cir. 1996). A one paragraph memorandum simply claiming that all of the documents sought are protected without a single reason or citation to authority is insufficient to sustain that burden and lacks any justification at all.

Even if some of the responsive documents are protected by the attorney client privilege it does not relieve the subpoenaed party of the obligation to produce those documents that are not privileged. Moreover, pursuant to the Fed. R. Civ. P. 45(d)(2) when a person withholds subpoenaed information under a claim that it is privileged, they must expressly make the claim

and produce a privilege log which "describe[s] the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R.Civ.P. 45(d)(2). Deluca has failed to comply with any of these requirements and therefore its Motion To Quash should be denied.

III. The Documents Requested Are Not Protected By the Attorney Work Product Doctrine.

The attorney work product doctrine protects from discovery "documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party['s attorney] ... [absent] a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). However, "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product. Were the doctrine to sweep so massively, the exception would hungrily swallow up the rule." In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007, 1015 (1st Cir. 1988). Work product protection is not triggered unless disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts. See Gould, Inc. v. Mitsui Mining & Smelting Co., 825 F.2d 676, 680 (2d Cir.1987). Moreover, "[s]ome materials do not merit heightened protection because, despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private." In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d at 1016. As with the attorney client privilege, the moment confidence ceases, the privilege is gone.

The documents requested from Deluca are not protected by the attorney work product doctrine. As discussed above, the documents requested relate to Joseph's departure from Votta & Votta and specifically seeks information that would have come from or been transmitted to Votta & Votta. As such, there is no protection from disclosure. Even if some responsive items are subject to the work product doctrine, it does not relieve Deluca of its obligation to produce those documents that are not covered by the privilege and it must produce a privilege log with sufficient detail for each item withheld to enable Unum to assess the claim. As a result, Deluca's Motion to Quash the Subpoena and for Protective Order on the basis of the attorney work product doctrine must be denied.

IV. Unum Is Not Prohibited From Obtaining Documents From Multiple Sources.

Deluca asserts in its one paragraph memorandum that "the documents requested in the subpoena are in the possession of the Plaintiff . . . and can be obtained . . . directly from the Plaintiff" as an additional reason to quash the Subpoena. The fact that documents may also be in the possession of Votta & Votta is not grounds for quashing the Subpoena. There is absolutely nothing it the Federal Rules that prohibits, a party from obtaining otherwise discoverable information from multiple sources. Deluca offers absolutely no authority to support this assertion or even any additional explanation as to why this fact would prohibit Unum from obtaining the documents from Deluca. Unum has the right to obtain discoverable information from any source it chooses. Moreover, there is no reason to believe that every responsive document in Deluca's files is in the possession of Votta & Votta. Therefore, there is no justification for quashing the Subpoena to Deluca.

**CONCLUSION**

For all of the foregoing reasons, Deluca & Weizenbaum's Motion to Quash and for Protective Order should be denied.

UNUM LIFE INSURANCE COMPANY OF AMERICA

By its attorney,

/s/ Joan O. Vorster

Joan O. Vorster, Esq. (#5784)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax: (508) 791-8502

Dated: May 29, 2008

CERTIFICATE OF SERVICE

I, Joan O. Vorster, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 29, 2008.

/s/ Joan O. Vorster

Joan O. Vorster, Esq.

Dated: May 29, 2008