UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

VOTTA & VOTTA LAW OFFICES, LTD.
Plaintiff

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, ALIAS,
Defendant

C.A. NO. 07-420-ML

# MEMORANDUM OF THE PLAINTIFF, VOTTA & VOTTA LAW OFFICES, LTD., IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## FACTS AND TRAVEL

Votta & Votta Law Offices, Ltd. is a professional corporation organized and existing under the laws of the State of Rhode Island. The founding member of Votta & Votta Law Offices, Ltd. was Jill S. Votta, Attorney at Law. Ms. Votta began practicing law within the State of Rhode Island in 1975. The professional corporation, Votta & Votta Law Offices, Ltd., was formed after Ms. Votta's younger brother, Joseph S. Votta, Jr., Esquire became licensed to practice within the State of Rhode Island. Steven J. Votta, Esquire, became a member of the firm in 1987 when he graduated from law school and received a license to practice law within the State of Rhode Island. At all times relevant to this claim, Jill, Joseph and Steven were equal shareholders in Votta & Votta Law Offices, Ltd.. Jill, Joseph and Steven did not have any written agreement which delineated the responsibilities and benefits of each member of the firm. Generally, each

attorney would receive one third of the profits of Votta & Votta Law Offices, Ltd. Although there were no formal rules, if any partner had an exceptional year or earned significantly greater amounts of money than his or her siblings, that might be reflected in the distribution of the profits of the business for that year. There was no agreement at all regarding the responsibility of any one partner for contributions to the office. To state the obvious, there would be no profits until costs and overhead were met and exceeded. To that extent, all of the income, from whatever source, would in the first instance be applied to ongoing costs.

In March, 1993, Joseph S. Votta, Jr., Esquire applied for and received from the defendant an overhead expense disability income policy, defendant's policy number LAD225675. A copy of the policy is attached hereto and labeled Exhibit 1. The policy obligated the defendant to provide reimbursement for overhead expenses in the event that Joseph became disabled from his regular occupation, in this case the practice of law. The policy had a total overhead expense benefit. At the time of the policy's issuance, that benefit was $96,000.00. At the time of this controversy, the maximum overhead business expense benefit had grown to $153,696.00 for each disability.

Unfortunately, Joseph S. Votta, Jr., Esquire became disabled from the practice of law in April, 2005. On February 27, 2006, Joseph transferred and assigned to Votta & Votta Law Offices, Ltd. any and all rights which he had or may have had in reference to the overhead disability policy, policy number LAD225675. A copy of that assignment is attached hereto and labeled Exhibit 2. Votta & Votta Law Offices, Ltd., primarily through the efforts of Steven J. Votta, Esquire, made claim pursuant to the subject policy. Initially, the defendant made some payments pursuant to the policy. The defendant paid

$69,841.00 to Votta & Votta Law Offices, Ltd. before terminating benefits. The remaining benefit under the subject policy is $83,855.00.

The defendant has made no payment pursuant to the policy since November, 2006. In December, 2006, the defendant questioned whether Joseph S. Votta, Jr., Esquire remained an owner of Votta & Votta Law Offices, Ltd. It is the defendant's contention that if Mr. Votta had conveyed his interest in the law firm, then the obligation of the defendant to pay pursuant to the policy would end. The plaintiff anticipates that the defendant in fact will file a motion for summary judgment in support of that position. The real issue in this case is whether Joseph S. Votta, Jr., Esquire remains a member and owner of Votta & Votta Law Offices, Ltd. If so, then this plaintiff is entitled to judgment as a matter of law regardless of any construction of the policy which might support defendant's contention.

Attached hereto and labeled Exhibit 3 is the affidavit of Jill S. Votta, Attorney at Law. Attached hereto and labeled Exhibit 4 is the affidavit of Steven J. Votta, Esquire. Both Jill S. Votta, Attorney at Law and Steven J. Votta, Esquire, testified that Joseph remains a member of Votta & Votta Law Offices, Ltd. Attached hereto and labeled Exhibit 5 are selected portions of the deposition of Joseph S. Votta, Jr., Esquire. Joseph also affirms that he remains a member of Votta & Votta Law Offices, Ltd. with a one third ownership interest in that firm. Attached hereto and labeled Exhibit 6 are portions of the deposition of Kahn, Litwin & Renza, the accounting firm which oversees the accounting and tax filings for Votta & Votta Law Offices, Ltd. as well as each individual member of the firm. John Renza and Robert Davies, both partners in Kahn, Litwin & Renza testified during the course of the deposition. Each stated unequivocally that to

their knowledge and according to the records and tax returns of Votta & Votta Law Offices, Ltd., Joseph S. Votta, Jr., Esquire remained an owner in the firm. Attached hereto and labeled Exhibit 7 are portions of the tax returns and accountant worksheets of Votta & Votta Law Offices, Ltd. for the years 2006 and 2007. Attached hereto and labeled Exhibit 8 are portions of the tax returns of Joseph S. Votta, Jr., Esquire, for the years 2006 and 2007. These returns state and demonstrate unequivocally that Joseph remains an owner of and an inactive partner, if one may use that term, in Votta & Votta Law Offices, Ltd. As can be seen from the affidavits of both Jill and Steven, Joseph continues to be listed as an attorney and member of the firm on letterhead. His office has not been changed or altered since his departure on March 31, 2005. He is able to return to the practice at any time he desires.

The natural question is how did Joseph's interest in Votta & Votta Law Offices, Ltd. become a matter of controversy? This was, plaintiff contends, the result of the confluence of two events. The first event was the loan made by Votta & Votta Law Offices, Ltd. to Joseph S. Votta, Jr., Esquire in April, 2006. Joseph had indicated to his family that he needed money. He had not earned any money as an attorney since the prior year, and specifically, since March 31, 2005. The family consulted with their accountant and that accountant, John Renza, suggested that the office make a loan to Joseph. Mr. Renza made a rough calculation of what would be the value of Joseph's interest in the law firm and suggested that a loan in that amount be made to Joseph. This occurred on April 13, 2006 at the offices of Kahn, Litwin & Renza. In conjunction with that loan, Joseph pledged his shares of stock in Votta & Votta Law Offices, Ltd. as security. Attached hereto and labeled Exhibit 9 is a copy of the stock certificate of

Joseph S. Votta, Jr., Esquire. Mr. Votta has signed the certificate on the back. The signature authorizes and appoints Jill S. Votta to transfer the shares on the books. This assignment is undated. Jill S. Votta has never transferred Joseph's shares on the books of the professional corporation, Votta & Votta Law Offices, Ltd. Joseph, as can be seen from both his and the corporation's tax returns remains a member of the firm. The monies advanced to Joseph are in fact noted as a loan on the company's tax returns. Joseph paid no taxes, whether capital gains or income secondary to his receipt of money in April, 2006. Lest there be any question regarding the nature of the transfer, Joseph on April 13, 2006 signed a receipt, a copy of which is attached hereto and labeled Exhibit 10. The receipt acknowledges Joseph's receipt of $33,690.67, "representing a loan payable from Votta & Votta Law Offices, Ltd." The second event which contributed to the defendant's grasping of Joseph's alleged divestiture of his interest in the business as an excuse for non payment was an examination conducted at the request of defendant by a psychiatrist, one Dr. Wall. Dr. Wall spoke to one of Joseph's treating physicians, Dr. Kenner. Joseph must have told Dr. Kenner about the meeting of April 2006 when Joseph received money. Dr. Wall assumed that Joseph received the funds secondary to his sale of his interest in the business. Dr. Wall also spoke to Ede Votta, Joseph's wife. Dr. Wall bluntly asked Mrs. Votta whether her husband had sold his share of the business. Mrs. Votta in response indicated that Joseph and his family had signed some papers about a month ago. The defendant assumed this was evidence of his transfer of his interest in the business.

In December, 2006, the defendant, secondary to Dr. Wall's report, demanded in writing a statement that Joseph S. Votta, Jr., Esquire remained an owner of Votta & Votta

Law Offices, Ltd. and also demanded documentation to support that contention. While Votta & Votta Law Offices, Ltd. through Steven J. Votta, Esquire provided a written statement that Joseph S. Votta, Jr., Esquire remained an owner of Votta & Votta Law Offices, Ltd., the firm did not at that point provide documentary evidence that Joseph continued to hold an ownership interest in Votta & Votta Law Offices, Ltd. In September, 2007, before commencement of this suit, Votta & Votta Law Offices, Ltd. again provided to this defendant written evidence that Joseph remained an owner in the firm as well as what was then the sole documentary evidence in support of that, the K-1 return for the tax year 2006. Despite receipt of that documentation, this defendant refused and continues to refuse to make any payments pursuant to the policy. The plaintiff then commenced this present action. The parties concluded discovery in July, 2008. Pursuant to the original pre-trial order of Judge Lisi, both parties are now filing motions for summary judgment.

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure states that a motion for summary judgment may be granted when there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and the moving party is indeed entitled to judgment as a matter of law. *Vigeant vs. United State of America, 462 Fed Supp F.Supp.2d 221(D.R.I. 2006).* While the moving

party initially has the responsibility of informing the court of the basis of the motion in identifying those parts of the record which demonstrate the absence of a genuine issue of fact, if the moving party satisfies this requirement, then the burden shifts to the non moving party to demonstrate a trial-worthy issue exists. *Vigeant vs. United States of America, Supra.* The party opposing the motion must show that there is sufficient evidence for a jury to find for him or it on each essential element of the claim and the evidence must be genuine and material. A party opposing a motion for summary judgment may not rely on conclusory allegations, improbable inferences, and unsupported speculation. If a party in opposition presents no such evidence, summary judgment is indeed appropriate.

**ARGUMENT**

Rule 56(e)(1) of the Federal Rules of Civil Procedure directs that a supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. In this case, the plaintiff has submitted either affidavits or sworn testimony from every person who could or would possibly be competent to testify on the matter stated. Each member of Votta & Votta Law Offices, Ltd. has stated unequivocally that Joseph remained a shareholder at all relevant times and in fact is today a shareholder. These are the three people who would know exactly the status of their professional corporation. Their affidavit or deposition testimony alone would warrant a grant of summary judgment. Is there any evidence which would either contradict or even marginally call into doubt the assertions of Joseph S. Votta, Jr., Jill S. Votta, Attorney at Law and Steven

J. Votta, Esquire. The official tax returns of the corporation and Joseph S. Votta, Jr., Esquire both demonstrate that Votta & votta Law Offices, Ltd. and Joseph S. Votta, Jr. have acted consistently with their assertions. That is, Mr. Votta and Votta & Votta Law Offices, Ltd. have both filed tax returns with the United States Government which indicate that Joseph is indeed a current owner of Votta & Votta Law Offices, Ltd.. The monies advanced to Joseph in April, 2006 have been carried on the firm's tax returns as a loan. The accountants for Votta & Votta Law Offices, Ltd. have testified unequivocally that their records reflect that Joseph remains a shareholder and the accounting firm of Kahn, Litwin & Renza and its principals have filed returns which demonstrate that ownership.

The only material, for it does not rise to the level of evidence, that the defendant can muster in opposition to the motion would not be admissible in evidence. The statements of the defendant's medical examiner, Dr. Wall, would not be based on personal knowledge and would not set forth facts which would be admissible in evidence. Dr. Wall apparently spoke to one of Joseph's treating physicians, Dr. Kenner. Such information is blatant hearsay and not entitled to any weight in this forum. Dr. Wall apparently also spoke to Ede Votta, Joseph's wife. He asked her bluntly whether Joseph had divested himself of his interest in the business. The answer of Mrs. Votta provided by Dr. Wall, which is not a direct quote, is that Joseph signed some papers a few weeks ago. The bona fide affidavit to support a summary judgment must necessarily be a statement of the facts which the affiant knows and is able to substantiate at trial. In this case, the evidence collected by the defendant to support its termination of benefits does not rise to that level. Hearsay testimony that would not be admissible if testified to at the

trial may not properly be set forth in an affidavit. *Gillentine vs. McKeand 426 Red 2d 717 (1st Cir.1970).*

Joseph S. Votta, Jr., Esquire did sign his stock certificate in blank. Every party who was privy to the transaction has testified without contradiction that his signature thereon was a pledge of the stock as security for the loan. As the parties have stated, this was a pledge. It cannot realistically be considered evidence sufficient to defeat this motion for summary judgment. For Joseph to have divested himself of his interest in Votta & Votta Law Offices, Ltd. there would have to have been a transfer of Joseph's shares on the books of Votta & Votta Law Offices, Ltd. There has been so such transfer Lest there be any question regarding the nature of the transaction, Joseph in fact on April 13, 2006 signed an acknowledgment which expressly declared that his receipt of money on that day was a loan. There is absolutely no evidence which would warrant a finding that Joseph had at any time divested himself of his interest in Votta & Votta Law Offices, Ltd. Summary judgment should be granted.

Although not necessary for the grant of this motion, it must be noted that the underlying premise of the defending insurer in this case is flawed. The defendant apparently concedes that payment under the policy was initially due but their obligation to pay would have ended when and if Joseph had divested himself of his ownership interest in Votta & Votta Law Offices, ltd. There is absolutely nothing in the policy of insurance at issue which would warrant that inference or finding. Nor is there a body of law which would support the contention of the defendant. In *Weissman vs. First Union Life Insurance Company, 44 F. Supp.2d 512(S.D.N.Y. 1999*) an insured under a disability policy, Jeffrey Weissman, began to receive disability payment after suffering a severe

disability, including brain damage secondary to a motorcycle accident. Initially, Unum paid the claim. Unum thereafter decided to terminate payment of disability benefits on the ground that it would not have issued the policy if it had known that Mr. Weissman's employer was a criminal enterprise engaged in illegal activities for profit, that Mr. Weissman had had no basic monthly earnings under the policy because earnings do not include profits from illegal activity, that Weissman could not be found to have been in the active employment of Baron under the policy because active employment does not include actions in furtherance of a criminal enterprise and further that the insured at the time of its termination was rendered permanently and legally disabled from his occupation by a decision of the Security and Exchange Commission. This was a policy which was governed by the Employee Retirement Income Security Act of 1974, 29USC §1001 and following. Since this was an "Erisa" policy the burden was upon Mr. Weissman to demonstrate that Unum's decision to terminate benefits was arbitrary and capricious. Mr. Weissman more than sustained that burden. The court held that a subsequent legal disability as a matter of law does not cur off an insurer's liability under a disability policy. The same rule should be applied in this case, in reference to an alleged divesture of an insured's interest in his or her business. Imagine, for example that the professional corporation of Votta & Votta Law Offices, Ltd. required each shareholder to be a licensed attorney on active status. If Joseph, secondary to his disability, elected to be or go on inactive status, would that give the insurer an opportunity to escape its legal obligations pursuant to the policy? But, given the uncontradicted facts of this case, it is an issue which at this juncture need not be addressed.

## CONCLUSION

Based upon the foregoing, the plaintiff requests that judgment in its behalf in the sam of $83,855.00 plus interest and costs. Plaintiff also requests that final judgment enter pursuant to Rule 54 of the Federal Rules of Civil Procedure and that the matter be assigned for trial in reference to plaintiff's outstanding claims of bad faith.

The Plaintiff,
By its Attorney,

/s/ Bernard P. Healy
Bernard P. Healy #2072
750 East Avenue
Pawtucket, RI 02860
(401) 721-2260 Phone
(401) 721-2230 Fax

## CERTIFICATE OF SERVICE

I, Bernard P. Healy, hereby certify that I have this day served a copy of the foregoing document, by e-mail and by mailing a copy, first class mail, postage prepaid to

Joan O. Vorster, Esquire
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608-1477
e-mail address: www.miricko'connell.com..

8/20/08
Date

**/s/ Bernard P. Healy**