# EXHIBIT 5

Deposition of Joseph S. Votta, Jr., Esquire.

Pages 1, 19, 20, 21, 31, 32,43, 44, 62.

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

No. 07-420-ML

---

VOTTA & VOTTA LAW OFFICES, LTD. )

Plaintiff, )

vs. )

UNUM LIFE INSURANCE COMPANY OF AMERICA, ALIAS)

Defendant. )

---

DEPOSITION OF JOSEPH S. VOTTA, JR., taken in behalf of the defendant, before Charlene Jones, duly appointed Commissioner within and for the State of Rhode Island, at the offices of DeLuca & Weizenbaum, 199 North Main Street, Providence, Rhode Island, on Monday, July 7, 2008, commencing at 9:06 a.m.

FLYNN REPORTING ASSOCIATES

One Exchange Place

Worcester, Massachusetts 01608

(508) 755-1303

DUPLICATE

Votta & Votta?

A. Yes.

Q. Are you still a shareholder or principal of Votta & Votta?

A. Yes.

Q. How many shares of stock do you own?

A. I don't know the number.

Q. Has your shares of stock always been the same?

A. I think so.

Q. You haven't been issued additional shares of stock?

A. No.

Q. And you have not assigned any stock to the company to Votta & Votta?

A. I believe I pledged my stock in conjunction with the loan; but other than that, no.

Q. Why do you say that you are still a shareholder of Votta & Votta?

A. Because I still have my shares.

Q. How do you still have your shares?

A. I don't know.

Q. How do you know that you still have your

shares?

A. The accountant told me.

**Q.** Who was the accountant that told you that?

A. Jack Renza.

**Q.** When did he tell you that?

A. I don't know when he told me that, but he told me that at the time that I was given those checks, and may have reiterated that to me when I saw him to appear to sign my income taxes the following year.

**Q.** Did Mr. Renza prepare your income taxes for the following year?

A. Yes.

**Q.** Personally, him personally?

A. I believe it's him personally. If he has someone else do it for him, I don't know about that.

**Q.** Did you meet with him personally when you signed your tax return for 2006?

A. I usually do, but I don't remember if I did in 2006.

**Q.** But yet you remember him telling you when you signed your tax return that you were

still a shareholder in Votta & Votta?

MR. DELUCA: I object. Go ahead.

A. I can remember having a question about my tax return that there was something on there pertaining to Votta & Votta that I was surprised to see or just didn't understand and he explained to me that as a shareholder that's how the taxes were.

**Q.** What was the thing that you were surprised to see on your tax return?

A. I think it had to do with the loan. I don't understand taxes very well.

**Q.** Was it a K-1?

A. You know, it might have been. I don't know about those kinds of things.

**Q.** You recall that before leaving Votta & Votta you received a W-2 for your compensation you received during the year, correct?

A. I believe so, yes.

**Q.** And you also received a K-1 as a shareholder or principal of the firm, correct?

A. You know, I really don't know. There was always things that the accountant took care

is you didn't understand why it was on your tax return?

A. Right. I guess my initial reaction --

MR. DELUCA: You answered the question.

THE WITNESS: Yeah.

MR. DELUCA: Wait for another question.

THE WITNESS: All right.

**Q.** The item that you didn't understand, did that pertain to you being a shareholder or principal at Votta & Votta?

A. No. I don't know specifically. I know there was something on there that I didn't understand what it was. So I just called him up and said, you know, "What is this thing?"

**Q.** And what did he say to you the best you can recall?

A. They said that that's the thing that pertains to your shares at Votta & Votta, and there may have been something else that pertained to the loan too. I don't remember, but.

**Q.** Okay. Now prior to having that conversation with Mr. Votta -- excuse me, with

Mr. Renza in April of 2008, did you believe that you were still a shareholder of Votta & Votta?

A. Yeah.

**Q.** Why so?

A. Because I had shares that I had not parted with.

**Q.** Now going back to 2005, did you at any time ask Votta & Votta for money after you left?

A. I don't know. I don't recall. I don't think so.

**Q.** Let me show you a document, Mr. Votta, and see if that helps you remember?

(Handing of document)

MR. DELUCA: Can I have the question read back, please?

(Prior question read by Reporter.)

**Q.** Mr. Votta, I have shown you a document dated August 2nd, 2005. It appears to bear your signature at the bottom. Is that your signature?

A. Yeah, it probably is.

**Q.** Is this a document that you typed up?

A. It probably is.

**Q.** Something that you authored?

A. Possibly, yeah.

**Q.** So in your conversations with Mr. Renza up until the meeting, he did not mention that this was going to be a loan to you?

MR. DELUCA: I object.

A. I don't recall.

**Q.** Did you have any conversations with Mr. Renza about being bought out for Votta & Votta?

A. At the meeting he explained that I wasn't being bought out, that I was still a member of the firm, that I could come back at any time, and that they were pledging my stock on this loan or that I was pledging my stock on this loan, and that's how it was.

**Q.** And you heard that for the first time at the meeting when you received the checks?

MR. DELUCA: I object.

A. That's my recollection.

**Q.** Now I just want to make sure I'm clear. Before the meeting where you received the money, and I have that that occurred on April 13th of 2006; does that sound right to you?

A. Probably.

**Q.** Okay. So before that April meeting with

Mr. Renza, and I understand your brother and sister were there as well?

A. Yes.

**Q.** Before that meeting you recall two conversations with Mr. Renza?

MR. DELUCA: Object.

**Q.** Is that correct?

MR. DELUCA: Objection.

A. I remember speaking to him shortly before the meeting and I also remember him telling me that they were working on getting me some money, which I believe was at the end of 2005 or something.

**Q.** Do you remember any other conversations with Mr. Renza before the meeting?

A. Specifically, no.

**Q.** At the time of the April 2006 meeting, did you have any intention of returning to work at Votta & Votta?

A. I didn't know what I was doing at that time.

**Q.** What about before the April 2006 meeting, did you have any intention of returning to work at Votta & Votta?

**Q.** Did you at any time believe that you were getting bought out for Votta & Votta?
A. No.
**Q.** Never?
MR. DELUCA: Objection. Asked and answered.
A. No. I was --
MR. DELUCA: You answered the question. The answer was no.
**Q.** Were there any discussions about you being bought out from Votta & Votta before the April meeting?
A. No.
**Q.** When you left the April meeting, did you believe that you had been bought out from Votta & Votta?
A. No.
**Q.** Did you ever tell anybody that you had been bought out from Votta & Votta?
A. I may have used that phrase. I may have used that phrase.
**Q.** Why would you have used that phrase?
A. Because it was shortly after that meeting I had an impartial medical evaluation by