UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| VOTTA & VOTTA LAW OFFICES, LTD.,<br>Plaintiff<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, ALIAS,<br>Defendant | C.A. NO. 07-420-ML |

**MEMORANDUM IN SUPPORT OF UNUM LIFE INSURANCE COMPANY OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NATURE & STATUS OF PROCEEDINGS**

In accordance with this Court's Order at the Rule 16 Scheduling Conference and L.R. Cv. 7(b), Unum Life Insurance Company of America ("Unum") submits this Opposition to Plaintiff's Motion for Partial Summary Judgment.

For the reasons stated in Unum's Motion for Summary Judgment, which will not be repeated here, as a matter of law the Business Overhead Expense ("BOE") Policy does not provide benefits where the insured has sold or transferred his interest in his business. The undisputed material facts establish that in April 2006, Joseph Votta ("Joseph") signed over his interest in Votta & Votta Law Offices, Ltd. ("V&V"). Accordingly, summary judgment should be entered in Unum's favor on all counts.

This Court should deny V&V's Motion for Partial Summary Judgment because the arguments asserted by V&V in support of their motion are insufficient to support a finding that V&V is entitled to benefits under the BOE policy.

## ARGUMENT

A. The Fact That The Vottas Have "Treated" The April 13, 2006 Transaction As A Loan Is Not Dispositive.

The crux of plaintiff's summary judgment argument is that Joseph is still a shareholder in V&V because they say so and because they have treated the April 13, 2006 transaction as a loan. The Votta's self serving statements are not dispositive, especially in light of all of the evidence proving that the transaction on April 13, 2006 was a buy-out. "The fact that the parties have called a transaction a loan does not mean it will be considered as such if the required elements are not present." 42 C.J.S. Implied Contracts §2 (West 2008) citing Finstar Eagan Bank, v. Marquette Bank, 466 N.W. 2d 8, 11 (Minn. Ct. App. 1991).

It is essential to the existence of a loan that there be both an actual delivery of something to another and a promise of repayment. Finstar Eagan Bank, 466 N.W. 2d at 11; First Nat'l Bank of Idaho v. Reins, 248 P. 9, 11 (1926). If these elements are not present, the transaction is not a loan regardless of what the parties call it. Bank of Slater v. Union Station Bank, 222 S.W. 993, 996 (1920). In determining whether the transaction was a loan, the Court will look to the substance of the transaction rather than the form or terminology of the parties. Credit Managers' Assn. v. Brubaker, 233 Cal. App. 3d 1587, 1592 (1991); Great American Ins. Co. v. National Health Services, Inc., 62 Cal. App. 3d 785, 791 (2nd Dist. 1976). Where no repayment of the money is contemplated the transaction is not a loan. Shold v. Goro, 480 N.W. 2d 892, 894 (Iowa 1992).

Despite the fact that the Vottas have called the April 13, 2006 transaction a loan, if Joseph has no obligation to repay the money it is not a loan. Barker v. Rhode Island Co., 35 R.I. 406, 407 (1913)(the fact that a husband and wife chose to call the transaction a loan was of no consequence where there was no obligation on her part to repay such money). Regardless of

what Jill, Steven or even Joseph Votta call the April 13, 2006 transaction, or what forms they file with their tax return, the undisputed fact remains that Joseph has no obligation to repay any of the money he received from V&V on April 13, 2006. Steven himself testified that he may have given Joseph a note that said "paid in full." (Stmt. Und. Facts, ¶46). Both Steven and Jill testified that Joseph has not repaid any of the money and they have no intentions of asking him to repay it. (Id. at ¶ 44). While V&V does carry a "loan" on its books, the amount of that loan completely contradicts what Jill and Steven believe is the amount "loaned" to Joseph, as well as the "receipt" Joseph allegedly signed on April 13, 2006. (Id. at ¶ 44, 48-50). Therefore, regardless of what V&V has called the transaction, without an obligation to pay there is no loan.

Looking at the substance of the transaction rather than the form leads to only one conclusion: the April 13, 2006 transaction was a buy-out and not a loan. In August 2005, Joseph asked to be paid money he was "owed." (Id. at ¶ 40). At no time did he ask V&V for a "loan." (Id. at ¶44). At the April 13, 2006 meeting, Joseph received three checks, one of which represented one-third of the book value for the firm. (Id. at ¶42). In exchange he signed the back of his stock certificate, indicating that he had "sold, assigned and transferred" his stock back to Votta & Votta. (Id. at ¶51). Despite what Joseph now claims, he himself believed that he had been bought out. (Id. at ¶57). He told his wife and medical providers that he had been bought out (Id. at ¶¶ 10-12 and 53). His own attorney stated in a letter to V&V that Joseph believed he had transferred his interest in V&V (Id. at ¶56).

And while Joseph is listed as a shareholder on his tax returns, Joseph admitted being surprised to see that entry and believing it was a mistake, called Mr. Renza for clarification. (Id. at ¶¶ 58 & 60). Therefore, despite V&V's claims, the substance of the transaction establishes that on April 13, 2006 Joseph transferred his interest in V&V.

Moreover, it cannot be overlooked that both V&V and Joseph have an incentive to now call the April 13, 2006 transaction a loan. If the April 13, 2006 transaction was not a buy-out, V&V believes they are entitled to the benefits of the BOE policy. Similarly, as long as Joseph claims the April 13, 2006 transaction is a loan, he does not have to pay taxes on the income. (Id. at ¶59).

B. Statements Contained in Dr. Wall's Independent Medical Examination Report Are Admissible.

Three of the statements that support Unum's determination that Joseph no longer has an interest in V&V are contained in the Independent Medical Examination ("IME") report from Dr. Wall. V&V claims that these statements are inadmissible and may not be considered by the Court. However, these statements fall within exceptions to the hearsay rule and are therefore admissible.

Under the business record exception to the hearsay rule, the IME report itself is a record of regularly conducted activity. Pursuant to Rule 803(6)(the business record exception), records of regularly conducted activity are admissible as an exception to the hearsay rule. Records of regular conducted activity are:

> A memorandum, report, record, or data compilation . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record…

Fed. R. Evid. 803(6).

Dr. Wall was retained to perform an independent medical examination of Joseph in order to assist Unum in determining whether Joseph was totally disabled from his occupation as a trial lawyer due to mental illness. Dr. Wall prepared this report in conjunction with his medical examination of Joseph. As a licensed physician it is his regular practice to prepare such a report.

The report was prepared at or near the time of his examination. Dr. Wall's IME Report is admissible as a business record as it meets the requirements of Rule 803(6).

While his report is itself admissible as a business record, the individual statements contained in the report are also separately admissible. In conjunction with his examination Dr. Wall also conducted interviews of Joseph's treating physicians and his wife regarding Joseph's condition. In his report, Dr. Wall states that Dr. Ruggiano reported to him that Joseph told Dr. Ruggiano that his business recently "bought him out." (Stmt. Und. Facts ¶ 10). Dr. Wall also states in his report that he learned from Dr. Kenner that when Joseph and Dr. Kenner last met on April 18, 2006, Joseph told Dr. Kenner that he had just sold his share of the business and was relieved by it. (Id. at ¶11). These statements contain two levels of hearsay; from Joseph to his physician and from the physician to Dr. Wall. Both levels, however, fit within exceptions to the hearsay rule.

The initial statements, from Joseph to his treating physicians, although hearsay, are not excluded by the hearsay rule because they fall into exception 803(4) as statements for purposes of medical diagnosis or treatment. Such statements (1) must be made for purposes of medical diagnosis or treatment, (2) must describe medical history, past or present symptoms, or the inception or general cause of such symptoms, and (3) must be reasonably pertinent to diagnosis or treatment. Fed. R. Evid. 803(4).

Here, Joseph was receiving mental health treatment with Dr. Ruggiano and Dr. Kenner. This condition resulted in Joseph leaving the practice of law. The statements that his business had recently bought him out, that he had sold his business, and that he was relieved by it, were made by Joseph for the purposes of medical diagnosis and treatment by Dr. Ruggiano and Dr. Kenner. They describe the general cause of his symptoms and his current mental condition,

and were reasonably pertinent to his diagnosis and treatment. As such these statements fall within Rule 803(4) and are admissible.

Dr. Wall obtained this information from Dr. Ruggiano and Dr. Kenner for the purpose of assessing Joseph's diagnosis, impairment, and prognosis. The communications from Dr. Ruggiano and Dr. Kenner to Dr. Wall were also for the purpose of medical diagnosis of Joseph. Rule 803(4) does not require the statements to be made by the patient. The exception includes statements by others made for the purposes of diagnosis. Danaipour v. McLarey, 386 F.3d 289, 297 (1st Cir. 2004) (admitting a independent psychologist's report regarding the condition of two children that contained statements by family members recounting to the doctors what the children had said to them.); see also U.S. v. Rendini, 738 F.2d 530, 534 (1st Cir. 1984) (holding that a doctor's notes from a meeting of a medical panel that considered the defendant's eligibility for a disability pension were properly received in evidence under Rule 803(4) as statements reasonably pertinent to medical diagnosis.) As such, the statements from Dr. Ruggiano and Dr. Kenner to Dr. Wall also fall within the Statements for Purposes of Medical Diagnosis or Treatment exception to the hearsay rule.

Dr. Wall's IME report also contains information he learned from Joseph's wife. Dr. Wall reports that when he asked Mrs. Votta whether Joseph had sold his share of the business, Mrs. Votta indicated that "he and his family signed some papers about a month ago" and "they had been talking about cutting him loose." (Stmt. Und. Facts, ¶12). Dr. Wall interviewed Mrs. Votta in order to review Joseph's history and to make a diagnosis. As discussed above, statements by family members and others, made for the purposes of diagnosing and pertinent to determining a diagnosis, may be admitted under Rule 803(4). Danaipour v. McLarey, 386 F.3d at 297.

Therefore, the information obtained from Mrs. Votta was for purposes of the medical diagnosis of Joseph Votta and, as such, is within the 803(4) exception to the hearsay rule.

Under Rule 803(4), the declarant's motive to promote treatment or diagnosis is the factor crucial to reliability. Id. Both Joseph's physician's statements and Mrs. Votta's statements were motivated by their desire to assist in the diagnosis of Joseph. Moreover, to the extent that there is any question as to the reliability of these statements, Joseph admitted during his deposition that he made these statements. (Stmt. Und. Facts, ¶53). Therefore, such statements are inherently reliable and admissible.

C. There is No Support For Plaintiff's Argument That A BOE Policy Provides Benefits Even After An Insured Has Transferred His Interest In His Business.

V&V argue in their motion for summary judgment that Unum must pay benefits under the BOE policy even if Joseph no longer has an interest in V&V. In support of this argument, V&V first claims there is nothing in the policy or any supportive case law to support Unum's position that the BOE policy does not provide benefits where the insured no longer has an interest in his business. As set forth in greater detail in Unum's Memorandum in Support of Its Motion for Summary Judgment, this simply is not the case. Covered Expenses are defined in the BOE policy as "your share of the usual and customary expenses . . ." (Stmt. Und. Facts, ¶3). Contrary to V&V's argument, several cases have interpreted this or very similar language and found that this policy language provides coverage for certain expenses incurred while the insured is operating the business and that where an insured is no longer a shareholder in his corporation he is not regularly liable for and can not actually incur any monthly overhead expenses. See Twin Tiers Eye Care Assoc., P.C. v. First Unum Life Ins. Co., 270 A.2d 918 (N.Y. App. Div. 4th Dep't 2000); Chenvert v. The Paul Revere Life Ins. Co., 2004 U.S. Dist. LEXIS 14947 (D. Del. 2004); Richardson v. Guardian Life Ins. Co. of Am., 161 Ore. Ap. 615, 617 (Or. Ct. App. 1999).

V&V then cites Weissman v. First Unum Life Insurance Co., 44 F. Supp. 2d 512 (S.D.N.Y. 1999) in support of their argument that Unum must pay benefits under the BOE policy, even if Joseph is no longer an owner. However, this case is completely unrelated to the issues in this case. Weissman did not involve a BOE policy, but rather, an individual policy and an insured who was legally prohibited from working in his occupation several years after becoming totally disabled. In Weissman, the insured was a broker who was injured in a car accident in 1993 resulting in his total disability. Unum paid benefits under the policy until it discovered that in 1996 the insured entered into a consent order with the Security and Exchange Commission, barring him from any further investment activities. The Court found that a subsequent legal disability (no longer permitted to work as a broker) does not cut off an insurer's liability under the policy for a prior medical disability. Id. at 521.

V&V's comparison of the case at hand to Weissman is inappropriate. Weissman involved a disability income policy. In order to receive benefits under a disability income policy, an insured need only satisfy the definition of "Total Disability." Unlike a disability income policy, determination of benefits under a BOE policy is a two step analysis. First, the insured must be totally disabled. Then he must also prove that he has incurred "Covered Expenses." Weissman only involved the issue of total disability. Unum is not contending that Joseph does not meet the definition of total disability because of his ownership status at V&V, but rather that V&V cannot satisfy the second step in the analysis. V&V cannot prove that Joseph has incurred "Covered Expenses" because he no longer has an ownership interest in the business. Contrary to plaintiff's argument, Weissman does not stand for the premise that nothing that happens after the date the insured becomes disabled will affect his right to benefits under a

BOE policy. Weissman is not in any way applicable to the BOE policy in this case and therefore has no bearing on the parties' summary judgment motions.

## CONCLUSION

For all of the foregoing reasons and for those set forth in Unum Life Insurance Company of America's Motion for Summary Judgment, the defendant respectfully requests that the Court deny Votta & Votta Law Offices LTD's Motion for Partial Summary Judgment and enter judgment in favor of the defendant.

UNUM LIFE INSURANCE COMPANY
OF AMERICA

By its attorney,

/s/ Joan O. Vorster

Joan O. Vorster, Esq. (#5784)
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax: (508) 791-8502

Dated: September 8, 2008

CERTIFICATE OF SERVICE

I, Joan O. Vorster, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 8, 2008.

/s/ Joan O. Vorster

Joan O. Vorster, Esq.

Dated: September 8, 2008