THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

VOTTA & VOTTA LAW
OFFICES, LTD, plaintiff

VS. Civil Action Number: 07-420-ML

UNUM LIFE INSURANCE COMPANY
OF AMERICA, alias Defendant

MEMORANDUM OF THE PLAINTIFF VOTTA & VOTTA LAW OFFICES, LTD. IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA

ARGUMENT

The Plaintiff, Votta & Votta Law Offices, Ltd., has moved for summary judgment alleging that Joseph S. Votta, Jr., Esquire remains a shareholder in that professional corporation. That remains the primary issue. The Defendant, the Unum Life Insurance Company of America, has moved for summary judgment asserting that the policy at issue requires that Joseph continue to maintain an ownership interest and secondly that Joseph divested himself of all interest in the corporation.

To address the legal issue, the specific policy does not by its terms direct or provide that Joseph, as the named insured, must continue to maintain an ownership interest in the corporation. The Defendant bases its contention that such is an explicit requirement of the policy by the definition of covered overhead expenses, which means Joseph's share of the usual and customary business expenses which Joseph or the business incurred on a regular basis and which were essential to the operation of the business. The Defendant contends that logically if Joseph divests himself of an

interest in the business, then he has no share of the business expenses incurred. That is hardly a clear and decisive statement that continued ownership in the business is a requirement of recovery under the policy. In fact, the definition of covered overhead expenses states in a second paragraph that, "Covered overhead expenses are normally paid from earnings that depend on your presence and individual efforts; they continue during disability; and they are ones for which you were liable in the normal conduct of the business before disability began." One must wonder whether the use of the past tense indicates that the insured need not be liable after disability began to recover under the policy. For what other reason would the present tense not be used? In addition, the policy directs that the Defendant will pay all benefits to the loss payee if living or otherwise will pay the named insured. The policy further provides that if the named insured dies while entitled to receive benefits, the Defendant will pay any remaining benefit and any unearned premium to the insured's estate. One must wonder how a dead person could be liable for ongoing business expenses. The very possibility that a decedent insured might be entitled to continued benefits, which the policy by its terms concedes, means that the named insured need not have continued liability for the business expenses and thus need not maintain an ownership interest in the corporation itself. Perhaps most telling is the claim information section of the policy itself found at page 11 of the policy. It directs that the Defendant must be given information needed to determine if a benefit is payable and how much that benefit should be. The Defendant specifies that it may require relevant portions of income tax returns for the insured or his business, income statements, vouchers for overhead expenses, and other statements or reports of receipts and payments. The

policy specifically provides, "We may also require evidence that you were liable for an overhead expense before disability began." Again, the past tense is used and the only reasonable inference is that the insured need not have ongoing liability for business expenses after the claim has accrued.

In seeking to ascertain the intent of the parties to a contract of insurance, the policy must be examined in its entirety and language used must be given its plain, ordinary and usual meaning. Malo vs. Aetna Casualty and Surety Company, 459 A2d 954 ( R.I. 1983). When the terms are clear and unambiguous, they must be applied as written and given their plain and ordinary meaning. Bush vs. Nationwide Mutual Insurance Company, 448 A2d 782 (R.I. 1982). In this case, the use of the past tense is clear and unambiguous. It indicates that an insured need not have ongoing liability for business expenses after a claim has accrued. At best, it can be said that the policy, in reference to an insured's continued ownership of the business, is ambiguous. The language of a policy of insurance drawn by the insurer must be construed most strongly against the insurer and in favor of the insured. Zavote vs. Ocean Accident & Guarantee Corp, 408 F. 2d 940 (1st Cir. 1969). Under Rhode Island law, language that is found to be ambiguous or capable of more than one reasonable interpretation must be construed liberally in favor of the insured and strictly against the insurer. St. Paul Fire and Marine Insurance Company vs. Warwick Dyeing Corporation, 26 F. 3d 1195 (1st Cir. 1994).

There is hardly a wealth of decisions from other jurisdictions on this issue. The case most clearly in point is Lincoln Dental Arts Clinic, Ltd. vs. The Mutual Life Insurance Company of New York, 1993 U.S. Dist. Lexis 8779 (N.D.Ill. 1993). In that

case, the insurer, as the defendent here, agreed to pay covered expenses which the insured incurs during total disability. As in the present case, the defendant insurer contended that after transfer of his interest in the business, the named insured did not incur any expenses. In its decision, the Court found that the insurer's position was contrary to public policy which favored the free transferability of corporate shares. This is particularly so when a shareholder suffers a disability. That shareholder, secondary to the disability itself, may require funds well in excess of those payable either under a general disability policy or a business overhead expense policy. Why should an insured's right to transfer his interest in a business be delayed or deferred until policy benefits under an overhead expense policy are exhausted? There is no reason to require that. This is not a situation where, secondary to the insured's disability, the business ceases to exist and ceases to incur ongoing expenses. Under that circumstance, payment of business overhead expenses would be arguably a windfall to the named insured. That is not the case here. Twin Tiers Eye Care Associates, P.C. vs. First Unum Life Insurance Company, 270 A.D. 2d 918 (N.Y. App. Div. 4th Dept 2000), cited by defendant, is simply not in point. The holding in that case is that an insured's non-ownership of a business or professional practice, or an insured's sale of an ownership interest prior to the period of total disability, will defeat a claim under a business overhead disability policy. In this case, the Defendant's allegations, which are expressly and hotly denied, are that Joseph divested himself of the interest in Votta & Votta Law Offices, LTD., in April, 2006, well after the alleged onset of disability and the case thus presents an entirely different situation. Moreover, in Wilson vs. Monarch Life Ins Co, 971 F. 2 d 312 (9th

Cir. 1992), the Claimant well before the onset of his alleged disability suffered a legal disability. It is clear that Mr. Wilson made his claim as a result of the prospective loss of his chiropractic license. Joseph S. Votta, Jr., Esquire in this case has not suffered a loss of license. His disability is very real and ongoing. There is no basis to deny payments pursuant to the policy at issue.

Even if the policy at issue required Joseph's continued ownership in Votta & Votta Law Offices, LTD, summary judgment would still be proper. The uncontradicted evidence is that Joseph never transferred his interest in Votta & Votta Law Offices in April, 2006. The parties who could possibly have knowledge of that transaction are Steven Votta, Esquire, Jill Votta, Attorney at Law, Joseph S. Votta, Jr., Esquire, and the accounting firm for Votta & Votta Law Offices LTD, Kahn Litwin & Renza. Each and every person has testified unequivocally that there never was a transfer of Joseph's stock in the corporation. The Defendant has presented no evidence whatsoever to support that assertion. Joseph did sign his stock certificate in blank as pledge of that certificate as security for a loan. Contemporaneously with his signature of the stock certificate, he acknowledged receipt of funds as a loan. The stock certificate itself expressly provides that to become final, the shares must be transferred on the books of the corporation. That has never occurred. True, Votta & Votta Law Offices, LTD. has not dunned Joseph for payments for his share of the overhead expenses. That hardly contradicts the Plaintiff's assertion that Joseph remains a shareholder in the company. It cannot be forgotten that Joseph is not only a shareholder, he is a sibling. This is a family business and the family and the business are not easily separated. The Defendant also asserts that one can infer Joseph

transferred his interest because Joseph's personal counsel and Joseph himself did not respond to inquiries from Unum regarding his transfer of interest in the business. How is that in any sense or fashion evidence to contradict the statements made by the principals and their accountant on personal knowledge? It does not even rise to the level of insinuation. It is quite clear that Joseph suffers from an emotional illness which has prevented him from pursuing his profession. According to the uncontradicted testimony, Joseph was unable to discuss any aspect of his former law practice with his family. In fact, Joseph, tragically enough, has had virtually no contact with his brother or sister at all. A plausible inference is that his failure is an effect of his illness, and not a result of his divesting his interest in the firm of Votta & Votta. The Defendant seems to contend that it was necessary for the Plaintiff to assess interest against Joseph for there to be a valid loan. There is no such case law. Likewise, to say that any confusion regarding the principal amount of the loan supports an inference that the loan was somehow not real is also specious. As Mr. Renza and Mr. Davies explained, the original intended loan was indeed $33,690.66 as acknowledged by the receipt signed by Joseph. However, to maintain the status of Votta & Votta Law Offices LTD as an S Corporation, it was necessary to include also the disbursement from the AAA account as a loan amount. In Defendant's memo, a notation is made that Renza billed Votta & Votta Law Offices LTD for work on "purchase of Joe Votta's interest in the corporation." In fact, the bill was for consultation regarding the purchase of Joseph's interest in the business. The Defendant contends at page 12 of its memorandum that the undisputed facts establish that on April 13th, 2006, Joseph transferred his interest in Votta & Votta, regardless of

how Votta & Votta treats the transaction on its financial records. There are no facts alleged by the Defendant to support that conclusion. The real issue is are the insinuations and allegations sufficient to defeat the Plaintiff's motion for summary judgment. They are not.

This Defendant has produced no evidence which would be admissible in Court to defeat the Plaintiff's motion for summary judgment. Reports made by Dr. Wall are blatant hearsay. The recollections of a secretary of DeLuca & Weizenbaum are blatant hearsay two times over. There is no question that according to every document, according to the testimony of every interested person, the transaction of April 13, 2006 constituted a loan. This Defendant has produced absolutely nothing to counter that assertion.

The Defendant seeks judgment on the bad faith claim brought by Votta & Votta Law Offices, LTD. In Skaling vs. Aetna Insurance Company, 799 A2d 997 (R.I. 2002), the Supreme Court of Rhode Island made sweeping changes to Rhode Island's law of bad faith. Prior to Skaling, if a claim was fairly debatable, no action for bad faith would lie. In Skaling, the Supreme Court of Rhode Island directed that an insurer must conduct its business in accord with the dictates of Rhode Island's Fair Claim Practice Act. This entails that an insurer pay valid claims. Even if one were to use the strictest standard, that of a claim being fairly debatable, this Defendant is guilty of bad faith. In 2007, Votta & Votta Law Offices, LTD provided this Defendant with documentary evidence, to wit Joseph's K1 for the tax year 2006, which evidenced his continuing ownership in the business. In addition, Steven J. Votta, Esquire, a practicing attorney, had stated unequivocally that Joseph remained a

shareholder in Votta & Votta Law Offices, LTD. At that point in time, what basis existed to contest this claim? After the depositions of Joseph Votta Jr., Esquire, Jill Votta, Attorney at Law, Steven J. Votta, Esquire, Kahn, Litwin & Renza and the production of every possible document regarding the transaction of April 13, 2006, it became undeniably clear that this Defendant owed the Plaintiff pursuant to the terms of the subject policy. To continue with the case when discovery has indisputably established liability is the very essence of bad faith. The Defendant's motion on that portion of the case should also therefore be denied.

CONCLUSION

Based upon the foregoing, the Plaintiff respectfully requests that the motion of the Defendant, Unum Life Insurance Company of America, for summary judgment be denied and that the motion of the Plaintiff, Votta & Votta Law Offices, LTD against that Defendant be granted.

The Plaintiff
Votta & Votta Law Offices, Ltd.
By its attorney:

____________________

Bernard P. Healy #2072
750 East Avenue
Pawtucket, RI 02860

CERTIFICATION

I hereby certify that on this date of ________________ a true copy of the herein was sent to Joan O. Vorster, Esquire at Mirick, O'Connell, DeMallie & Lougee, LLP, 100 Front Street, Worcester, Ma 01608-1477 by electronic mail, facsimile and first class mail, postage prepaid.

________________________