**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **VOTTA & VOTTA LAW OFFICES, LTD.**<br>**Plaintiff**<br><br>**v.**<br><br>**UNUM LIFE INSURANCE COMPANY OF AMERICA, ALIAS,**<br>**Defendant** | **C.A. NO. 07-420-ML** |

**OBJECTION OF THE PLAINTIFF VOTTA & VOTTA LAW OFFICES, LTD. TO THE STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED BY UNUM LIFE INSURANCE COMPANY OF AMERICA**

Now comes the plaintiff, Votta & Votta Law Offices, Ltd., and pursuant to the local rules applicable to civil proceedings in the United States District Court for the District of Rhode Island, LR Cv 56 (3), files its denial and controversion of portions of the defendant's statement of undisputed material facts. Set forth below are the alleged undisputed facts objected to and the basis of the objection:

5. Prior to his disability, Joseph worked as a trial attorney. He was a partner in Votta & Votta ("V & V"), along with his brother, Steven Votta ("Steven") and his sister, Jill Votta ("Jill").

   Objection: The plaintiff objects to this request only to the extent that it fails to designate that Votta & Votta Law Offices, Ltd. is a professional corporation and that technically Joseph was and is a shareholder. While it may generally be said

that Joseph was a "partner" in Votta & Votta, the more exact definition would be that he was a shareholder and participating attorney.

14. Given the statements in the IME report indicating that Joseph had sold his share of V & V, and Steven's statement to the contrary, Unum asked for information regarding Joseph's ownership in V & V. Specifically, on June 1st, 2006, Unum requested via fax, a copy of either the purchase and sales agreement, or copies of both sides of Joseph's stock certificate so Unum could determine the actual buy-out date.

Objection: The plaintiff objects to this to the extent that it implicitly assigns as a motive to the defendant for its request, the prior allegedly inconsistent reports from Joseph Votta's treating physicians and the statement of Steven Votta, Esquire. To that extent, the statement is argumentative, and not purely a statement of fact. The plaintiff agrees that Unum did request via fax a copy of either the purchase and sales agreement, or copies of both sides of Joseph's stock certificate.

15. When Unum did not receive a response to the June 1st, 2005 (sic) fax, the disability benefits specialist assigned to the claim called Steven, who informed her in an August 10, 2006 telephone call, that there had been no "buy-out" that he loaned Joseph some money that Joseph would pay back at a later date; that Joseph could come back to work at any time; and that Joseph was still a one third owner, responsible for expenses.

Objection: The plaintiff does not object to the fact of the telephone conversation or the substance of that conversation as outlined in request number 15. The plaintiff again objects to the request to the extent that it attempts to assign to the defendant a motive for the call. That is not a fact and to the extent that the defendant attempts to establish a legitimate motive for its actions, plaintiff objects to the request.

17. Based on Steven's representations during the telephone call, Unum paid benefits under the BOE policy from June 2005 to November 2005 for a total of $38,424.

Objection: The plaintiff contests and controverts that that payment was based on Steven's representations during this telephone call. In fact, if one were to give complete credence to the defendant's allegations, Joseph would not have divested himself of his interest in the business until April, 2006. The plaintiff objects to the defendant's attempt to establish a motive for its actions, which is not a fact and which is not germane to this action.

19. Rather than provide the confirmation Unum requested, by way of a letter dated October 13, 2006, Steven demanded to know what section of the BOE policy allowed Unum to request written statements and insisted that Unum indicate, "indicate any section(s) of the policy that makes this matter relevant to our claim."

Objection: The plaintiff objects and controverts this to the extent that this letter from Steven somehow constituted an evasive response to Unum's earlier request.

22. Having received no information from Votta & Votta, Unum inquired of Joseph, through his attorney Amato A. DeLuca. On October 27, 2006, Jennifer, Attorney Deluca's assistant, stated in a telephone call with Unum that she "recall[ed] [Joseph] signing something or saying that he sold his share in April 2006."

Objection: Plaintiff objects to this request since it again assigns to the defendant an implicit motive for its actions which is not a fact. A conversation with Mr. DeLuca's assistant is hearsay and not material to this claim.

23. On October 31, 2006, Jennifer from Joseph's attorney's office again contacted Unum and stated that she would have an answer to Unum's question regarding the sale of Joseph's shares in April.

Objection: While the plaintiff has no knowledge, plaintiff can accept the fact that this conversation may well have occurred. Why this is an alleged material fact is very much at issue.

26. Rather than provide any written verification of Joseph's ownership, V & V retained legal counsel, who in a letter dated December 27, 2006, took the position that "ownership of business need not continue during the disability", "that liability is determined at the time the claim accrues," and that "nothing that happens thereafter affects liability under the policy". V & V refused to produce information regarding Joseph's ownership status.

Objection: Plaintiff again objects to this statement to the extent that it attempts to assign a motive, and in fact an evasive motive, to the plaintiff. Plaintiff agrees that it engaged counsel and that the statements contained in the statement of material fact are quotes from the correspondence of plaintiff's counsel. The plaintiff denies that its motive was in fact to avoid providing any written verification of Joseph's ownership. In fact, as noted by this defendant's own statement, it had already received written verification from Steven Votta, Esquire, of Joseph's ownership of the business.

27. Neither Joseph nor his attorney responded to Unum's December 7, 2006 request. In fact, Joseph does not believe that he ever saw the letter.

Objection: Plaintiff agrees that in his deposition Joseph stated he did not believe that he ever saw the letter. Plaintiff also agrees that Unum received no response. Plaintiff controverts this statement to the extent that it is in any way a material fact.

29. Joseph never saw the December 29, 2006 letter and neither he nor his attorney provided Unum with any contradictory evidence.

Objection: In his deposition, Joseph Votta indeed testified that he never saw the December 29, 2006 letter sent to his attorney, Amato A. DeLuca, Esquire. Also, plaintiff agrees that neither Joseph nor Mr. DeLuca provided Unum with any contradictory evidence. Plaintiff contests the fact that this is in any way a statement of a material fact. At the time of this correspondence, the defendant

was well aware that Joseph had assigned all his right title and interest to the proceeds of the policy at issue to Votta & Votta Law Offices, Ltd. Tellingly, the December 29, 2006 letter referenced in paragraphs 28 and 29 of the defendant's statement of undisputed material facts was never sent to Votta & Votta Law Offices, Ltd. or its attorney.

34. Over three months later, on June 22, 2007, V & V changed its tune and decided it would provide information regarding Joseph's ownership of V & V. V & V enclosed a schedule K-1 for Joseph, which was prepared in reference to the 2006 tax year. The K-1 lists Joseph's percentage of stock for the current year, 2006, as one third. V & V also informed Unum that "Joseph Votta, Jr., Esq., received a loan from the law office for which he pledged as security the stock issued by Votta & Votta Law Offices, Ltd. to him. The Law Firm currently holds that stock as security for the loan." V & V maintained that this did not constitute a transfer of Joseph's interest in the firm, such that they believe Joseph is still a one third owner of V & V. Finally, V & V informed Unum that there is no other documentation to evidence his current ownership of V & V.

Objection: The plaintiff objects to the extent that it alleges that V & V "changed its tune". That is hardly a statement of material fact. Plaintiff agrees that the letter was sent and that the quote contained in paragraph 34 of defendant's statement of undisputed facts is accurate.

36. V & V replied on September 26, 2007, stating that there is no written loan

agreement, no proof of Joseph's responsibility for one third of expenses, and that he never signed a document that could be described as an employment agreement.

Objection: The plaintiff objects to this request to this statement to the extent that Votta & Votta through its counsel stated there was no proof of Joseph's responsibility for one third of expenses. In fact, the correspondence submitted a copy of the original application wherein Joseph had himself indicated he was responsible for one third of the expenses.

38. At no time did anyone at V & V ask Joseph to provide any information regarding his ownership status in V & V to Unum.

Objection: The plaintiff agrees that no one asked Joseph at any time to provide information regarding his ownership status. The plaintiff denies that this is a material fact.

43. The $33,690.66 check is labeled "loan to stockholder." According to Renza, although the $33,690.66 check represents Joseph's share of the book value of V & V, it was "treated" by V & V as a loan. (Vorster aff., "Tab V. Renza Depo at 49:19-50:01). Classifying the payment as a loan provided a benefit to Joseph because he would not need to pay taxes on the payment. Classifying the payment as a buyout would require Joe to pay long term capital gains. (id, Renza depo at 58:19-24; 59:18-24;60:1-2).

Objection: The plaintiff objects to this to the extent that it implies that the payment of $33,690.66 in fact constituted a buyout of Joseph's interest and that

the "treatment" of the payment as a loan is to any extent a subterfuge. Because the payment was a loan, Joseph did not have to pay taxes on the payment. That is in fact an accurate statement of Mr. Renza's testimony. Had there been a sale of Joseph's interest in the business, Joseph at that time would have to have paid a long term capital gains tax which he did not. Implicit in statement of fact 43 is the assertion that a loan of the book value of V & V is equivalent to a sale of Joseph's beneficial interest in the corporation. Such is not the case. Whether the book value and actual value are even equivalent is uncertain. While plaintiff does not object to the strict accuracy of the individual statements, their presentation as related events constitutes spin.

44. Accordingly, at the meeting Joseph signed a document entitled "receipt" acknowledging that he received a "loan" in the amount of $33,690.66 from V & V on April 13, 2006. (Vorster aff., Tab A, Joseph Depo at 55:17-56:11;Tab, (Joseph depo, ex. 5). However, despite asking V & V for payment of his bonus account in August 2005, Joseph concedes that he never asked V & V for a loan. (Vorster aff., Tab A Joseph Depo at 38:01-06).

Objection: The plaintiff objects to this request. In the first instance, the word accordingly seems to imply that the document entitled receipt spoke in terms of a loan only because, as outlined in paragraph 43, there were tax advantages in classifying the transaction as a loan. The second sentence of paragraph 44 beginning with "however" implies that the transaction was not a loan because

Joseph had never specifically asked Votta & Votta for a loan before April 13, 2006.

47. Despite being aware that Joseph had applied for disability benefits, V & V did not expect or ask Joseph to repay the loan after he received his disability benefits. Objection: The plaintiff objects to this to the extent that it is not a statement of material facts. The implicit inference is that Joseph, before his return to Votta & Votta, has some obligation to repay the loan and that his failure to do so, or alternately Votta & Votta's failure to demand that he do so, somehow casts the validity of the original transaction as a loan in doubt. Such is not the case.

48. Indeed, neither Joseph, Jill nor Steven are aware of the amount of the loan. At the depositions, Jill, Steven and Joseph all testified that the loan the check was in the amount of $33,690.66.

Objection: The plaintiff contests that this is a material fact and that the parties were unaware of the loan amount. In fact, the loan amount was indeed $ 33,690.66. For bookkeeping purposes, V & V's accountants added the payment from the AAA account to the loan amount to comply with federal regulations regarding commensurate payments to all members of a sub chapter S corporation.

49. However, according to V & V's financial records, the loan to Joseph is $40,522.29.

Objection: The plaintiff agrees that the financial records do carry that sum as the amount of the loan since that amount, as noted above, includes the disbursement from the AAA account.

50. Joseph was not aware that V & V was carrying a loan of approximately $40,000.00; he does not know if he has any obligation to repay a $40,000.00 loan; and in fact has no recollection of what any of the numbers were with respect to the "loan" he allegedly received from V & V.

Objection: The plaintiff contends that this statement is not accurate. Joseph has testified at his deposition, that he was aware from April 13, 2006 through the present that the receipt of $33,590.66 was in fact a loan. While Joseph may not have been aware that the additional payment from the AAA account was also carried on V & V's books as part of the loan, Joseph was well aware that the funds received from Votta & Votta on April 13, 2006 were in part a loan.

51. At the April 13, 2006 meeting, Joseph also signed the back of his stock certificate which states that he "sells, assigns and transfers" his stock to V & V.

Objection: While the plaintiff agrees that Joseph signed the stock certificate, the certificate was not dated and to the extent that the implicit claim is that Joseph at that time sold assigned and transferred his stock to Votta & Votta, the plaintiff denies this as a fact.

52. While V & V claims that Joseph signed the back of the stock certificate to pledge it for security for the loan, no corresponding pledge agreement was signed.

Objection: The plaintiff objects to this request. The plaintiff does claim that Joseph signed the back of the stock certificate as a pledge. The plaintiff agrees that there was also no specific pledge agreement that was signed. The counter position of those two facts in paragraph 52 of the defendant's statement of material facts implicitly asserts that the fact that there was no pledge agreement makes Joseph signature as a pledge less credible. The plaintiff objects to that inherent implication in paragraph 52.

53. One week after the April 13, 2006 meeting, Joseph appeared for his IME with Dr. Wall. (Vorster aff., Tab A, Joseph depo. 63:23-64:01). Joseph concedes that he told Dr. Wall that he had "settled up" with his siblings and answered affirmatively when Dr. Wall asked him if he had been bought out. (id. At 62:18-63:18). Joseph also admits that he may have told his medical providers that he had sold his share of the business. (id. At 70:01-06)

Objection: The plaintiff agrees that Joseph testified at his deposition that he may have told Dr. Wall that he had settled up and that he may have told his medical providers that he had sold his share of the business or words to that effect. The plaintiff contests that this is a statement of a material fact.

55. On June 1, 2006, while Joseph was totally disabled and at a time when the family claims to have been worried about his health and financial status, V & V notified Joseph that they were terminating his health insurance effective July 2006.

Objection: The plaintiff objects to this as a statement of material fact. It implicitly attempts to negate the express concern of Steven Votta, Esq. and Jill Votta Attorney at Law for their brother by implying that if that concern were genuine, his health insurance coverage would not have been canceled. In fact, Steven Votta, Jill Votta and Joseph Votta have all testified that the reason for cancellation of the coverage was secondary to an inability of Votta & Votta to continue payment of those premiums. Moreover, as the uncontradicted facts establish, Joseph had received a month and one half earlier, payments and loans in excess of $40,000.00.

56. In October, 2006, after Unum contacted Joseph's attorney to inquire about Joseph's ownership in V & V, attorney DeLuca in a letter dated Octorer 31, 2006 wrote to V & V and stated: " I have been requested by Unum Provident to provide proof that your brother, Joseph Votta, Jr. no longer has an interest in Votta & Votta Law Offices, Ltd. Joe believes he signed away any interest in Votta & Votta in April of 2006. Please provide me with a copy of such document ...".

Objection: The plaintiff agrees that Amato DeLuca, Esq. sent the letter referred to in paragraph 56. The plaintiff denies that this is a material fact. This is at best hearsay upon hearsay. To the extent that the defendant is asserting this as evidence that Joseph assigned his interest in Votta & Votta in April 2006, the

plaintiff denies that this is material.

57. Joseph admits that as of the date of October 31, 2006 letter, he believed that he had signed away any interest in V & V in April, 2006.

Objection: The plaintiff denies that this is an accurate statement of Joseph's testimony as contained in his deposition.

58. In fact, as late as April 2008, Joseph still believed that he had transferred his interest in V & V. In April, 2008, when Joseph received his 2007 tax return, Joseph noted an entry that referred to V & V. He did not understand the entry and called Renza for clarification. Renza told Joseph that the item on his tax return pertained to his shares at V & V.

Objection: The plaintiff objects to this as a statement of material fact. The plaintiff specifically contests the assertion that in April 2008 Joseph believed he had transferred his interest in Votta & Votta. Such was not his testimony at his deposition. The plaintiff has earlier submitted portions of Joseph's deposition establishing exactly his testimony that he knew he had not transferred his interest in V & V and had never had a belief to the effect. While plaintiff agrees that Joseph had a question regarding his tax return, that does not support the bold assertion that Joseph ever believed, never mind still believed, that he transferred his interest in Votta & Votta.

59. Joseph concedes that in a meeting with his attorney on the morning of his deposition, he learned of the tax consequences of calling the "$33,690.66" payment a buyout rather than a loan. (Vorster aff., Tab A, Joseph Depo at 95:17-96:08). Accordingly, contrary to his previous statements, and statements made by his wife and his lawyer indicating that he had transferred his shares in V & V, Joseph now claims he received a loan, and pledged his stock for that loan. (Vorster aff., Tab A Joseph depo 50:08-16;59:03-10). Joseph has not paid taxes on the $33,690.66 payment. (Vorster aff., Tab V Renza depo at 59:18-60:02).

Objection: The plaintiff objects to this as a statement of material fact. It is misleading. The implication is that Joseph Votta changed his account of the proceedings on the morning of his deposition only when he learned of tax consequences regarding his receipt of the $33,690.66 loan. Nor is that assertion contrary to any previous statements of his nor to any statements made by his wife and his lawyer. The plaintiff agrees that Joseph has not paid taxes on the $33,690.66 payment but this is because it is indeed a loan.

60. While V & V seeks to establish that Joseph remained a shareholder in 2006 and 2007 because he was issued a K-1 by V & V, Joseph was unaware that he had been issued a K-1 until April 2008.

Objection: The plaintiff objects to this as a statement of material facts. It denies in first instance that Joseph was unaware that he had been issued a K-1 until April 2008. His 2006 tax return which would have been received by him in 2007 and which he filed with the United States Government would have had a K-1 attached

to it. Joseph's testimony at his deposition was not that he was entirely unaware that he had been issued a K-1. Rather, the testimony was that he received the tax returns in the usual course and did not consider the specific details which he left to the expertise of his accountants. To the extent that Joseph's uncertainty regarding his tax returns somehow calls into question Joseph remaining a shareholder in Votta & Votta, the same is an unfair implication and hardly a statement of fact.

62. Indeed the K-1 issued to Joseph for tax years 2006 and 2007 had no tax implications for Joseph. As Renza confirmed, the K-1's were a "wash" in terms of tax liability.

Objection: The plaintiff denies that the issuance of a K-1 had no tax implications for Joseph. The plaintiff agrees that secondary to the K-1 Joseph was not required to pay income taxes on income received from Votta & Votta since in real terms he had not received any such income. Despite that, the K-1 definitely has tax implications, including, if inaccurate, possible perjury charges.

63. While V & V claims that Joseph is still responsible for one third of the overhead expenses of V & V, it has not demanded payment from Joseph upon Unum's refusal to pay the remaining benefits under the policy.

Objection: Votta & Votta objects to this statement to the extent that it seems to imply that it must, if it is to assert that Joseph is responsible for one third of the overhead expenses, demand payment from him. The plaintiff agrees that Votta & Votta has not demanded payment from Joseph and also agrees that Unum has refused to pay the remaining benefits under the policy.

The Plaintiff,
Votta & Votta Law Offices, Ltd.
By its Attorney,

/s/ Bernard P. Healy
Bernard P. Healy #2072
750 East Avenue
Pawtucket, RI 02860
(401) 721-2260 Phone
(401) 721-2230 Fax

**CERTIFICATE OF SERVICE**

I, Bernard P. Healy, hereby certify that I have this day served a copy of the foregoing document, by e-mail and by mailing a copy, first class mail, postage prepaid to

Joan O. Vorster, Esquire
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street, Worcester, MA 01608-1477
e-mail address: www.miricko'connell.com..

09/08/08
Date

**/s/ Bernard P. Healy_________________**